IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-against-<br><br>ALBERTO PENA et al.,<br><br>Defendants. | 15-CR-551 (AJN)<br><br>DEFENDANT'S MOTION TO DISMISS COUNT II |

Comes now Mr. Alberto Pena, by and through his undersigned counsel, Sher Tremonte LLP, and hereby moves this Honorable Court, pursuant to Federal Rules of Criminal Procedure 12(b)(3)(B)(v) and (b)(1) to dismiss Count II (alleged violation of 18 U.S.C. § 924(c)) for failure to state a claim.

As discussed below, the Hobbs Act robbery charge (Count I) underlying the § 924(c) offense (Count II) categorically fails to qualify as a crime of violence within the meaning of 18 U.S.C. § 924(c)(3)(A), and the residual clause of § 924(c)(3)(B) is unconstitutionally vague under *Johnson v. United States*, --- U.S. ---, 135 S. Ct. 2551 (2015). Therefore, Count II does not state an offense and must be dismissed.

## INTRODUCTION

Count II of the Indictment charges Mr. Pena with knowingly using and carrying firearms and aiding and abetting the use, carrying, and possession of firearms during and in relation to a crime of violence, in violation of 18 U.S.C. 924(c). Specifically, Count II alleges that the underlying "crime of violence" for the 924(c) is "Hobbs Act robbery" in violation of 18 U.S.C. § 1951(b). However, the Government cannot prove Count II, because Hobbs Act robbery categorically fails to qualify as a "crime of violence."

Hobbs Act robbery as defined by 18 U.S.C. § 1951(b) does not constitute a "crime of violence" under § 924(c)(3)(A) (the force clause) because it can be accomplished by placing one in fear of future injury to his person or property without (a) threat of *violent physical force* and (b) the *intentional* threat of the same.  Additionally, in light of the Supreme Court's recent precedent in *Johnson,* the "residual clause" within § 924(c)(3)(B) is unconstitutionally vague and therefore cannot sustain a conviction.  For these reasons, Count II of the Indictment must be dismissed.

## STATUTES INVOLVED

This motion primarily concerns the following two federal statutes:

1) <u>18 U.S.C. § 1951(b)</u>

Section 1951(b), in pertinent part, provides:

The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining shall [be punished in accordance with the remainder of the statute].

2) <u>18 U.S.C. § 924(c)</u>

Section 924(c)(1)(A), in pertinent part, provides:

[A]ny person who, during and in relation to a crime of violence . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, shall, or who in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence. . . . .
    (i) be sentenced to a term of imprisonment of not less than 5 years;
    (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and
    (iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

Under § 924(c)(3), "crime of violence" is defined as follows:

For purposes of this subsection the term "crime of violence" means an offense that is a felony and—

   (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

   (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

## ARGUMENT

The Court must dismiss Count II, the alleged § 924(c) violation, because the predicate Hobbs Act robbery offense as defined by § 1951(b) does not qualify as a "crime of violence" as a matter of law.  The relevant portion of § 924(c) defining a "crime of violence" has two clauses: 924(c)(3)(A), commonly referred to as the "force" clause, and 924(c)(3)(B), commonly referred to as the "residual" clause.  Under the analytical framework outlined by the Supreme Court, the Court must first apply the categorical approach to determine whether Hobbs Act robbery qualifies as a "crime of violence" under § 924(c)(3)'s force clause.  Applying that approach, Hobbs Act robbery under § 1951 categorically fails to qualify as a "crime of violence" under § 924(c)(3)'s force clause because, as defined under § 1951, the offense can be committed by putting one in fear of future injury to his person or property, which (a) does not require the threat of *violent physical force* against persons or property, and (b) does not require an *intentional* threat of the same.  This Court should therefore conclude that Hobbs Act robbery is not a crime of violence under the force clause.  The only remaining basis for a § 924(c) conviction is the residual clause, but the residual clause is constitutionally incapable of supporting a conviction,

because the Supreme Court recently struck down a virtually identical provision of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1), as void for vagueness in *Johnson v. United States*, 135 S. Ct. 2551 (2015). Section 924(c)(3)'s residual clause suffers from the same constitutional infirmity as the ACCA and therefore cannot support a conviction. Accordingly, neither clause of § 924(c) can support a conviction predicated on Hobbs Act robbery, and Count II of the Indictment must be dismissed.

I. **HOBBS ACT ROBBERY UNDER § 1951(b) DOES NOT QUALIFY AS A "CRIME OF VIOLENCE" UNDER THE FORCE CLAUSE OF § 924(c)(3) BECAUSE IT CAN BE VIOLATED WITHOUT (A) THE USE, ATTEMPTED USE, OR THREATENED USE OF *VIOLENT PHYSICAL FORCE*, OR (B) AN *INTENTIONAL* THREAT OF THE SAME.**

To determine whether a predicate offense qualifies as a "crime of violence" under § 924(c), courts use the categorical approach, *see Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013); *United States v. Acosta,* 470 F.3d 132, 135 (2d Cir. 2006), which requires that courts "look only to the statutory definitions – *i.e.*, the elements – of a defendant's [offense] and not to the particular facts underlying [the offense]" in determining whether the offense qualifies as a "crime of violence." *Descamps*, 133 S. Ct. at 2283 (citation omitted). Thus, courts "consider the offense generically, that is to say, [they] examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." *United States v. Beardsley*, 691 F.3d 252, 259 (2d Cir. 2012) (quoting *Begay v. United States*, 553 U.S. 137, 141 (2008)).

The categorical approach requires courts to consider "the minimum criminal conduct necessary to sustain a conviction" under the given statute. *Martinez v. Mukasey*, 551 F.3d 113, 118 (2d Cir. 2008). If such minimum conduct fails to fit within the federal definition of a

"crime of violence," the offense categorically fails to constitute a crime of violence. *See Jobson v. Ashcroft*, 326 F.3d 367, 372 (2d Cir. 2003).[1]

Post-*Descamps,* for Hobbs Act robbery under § 1951(b) to qualify as a "crime of violence" under § 924(c)(3)'s force clause, the offense must have an element of "physical force." And "physical force" means "*violent* force" – that is "strong physical force," which is "capable of causing physical pain or injury to another person." *Johnson v. United States,* 559 U.S. 133, 140 (2010) (emphasis in original). Hobbs Act robbery, as defined by § 1951, does not meet this requirement because it can be accomplished by putting someone in *fear of future injury to his person or property*, which does not require the use, attempted use, or threatened use of "violent force." Additionally, because the act of putting someone in fear of injury can be accomplished without an *intentional* threat of physical force, it fails to satisfy the *mens rea* required under the § 924(c)(3)(A) force clause.

---

[1] Under certain "narrow" circumstances, courts apply a "modified" categorical approach, in which a federal sentencing court may look beyond the legal definition of the offense to a small list of judicial documents to determine whether the defendant pleaded guilty to a "crime of violence." *Descamps*, 133 S. Ct. at 2283, 2285. Such a modified categorical approach may only be applied if the offense is divisible. *See id.* at 2283; *accord Beardsley*, 691 F.3d at 269 ("[D]ivisibility is required if the modified categorical approach is to be employed."). Hobbs Act robbery is not divisible. Although the statute provides alternative means by which the offense can be accomplished, *see* 18 U.S.C. § 1951(b)(1) ("The term 'robbery' means the unlawful taking or obtaining of personal property . . . by means of actual or threatened force, or violence, or fear of injury . . . ), these disjunctive means are not alternative elements that a jury must select unanimously beyond a reasonable doubt in order to convict. Jurors are merely asked to determine whether the element of robbery is met based on *any* of the enumerated means and they are not required to agree on which means were used. *See* Modern Federal Jury Instructions – Criminal 50-3, 50-5. The statute does not provide "multiple, alternative elements . . . effectively creat[ing] several different crimes." *Descamps*, 133 S. Ct. at 2285 (internal quotation marks and alteration omitted). Accordingly, Hobbs Act robbery is indivisible and the Court must apply the categorical approach.

### A. The Act of Putting Someone In Fear of Injury Does Not Require the Use, Attempted, Use or Threatened Use of "Violent Force."

The plain language of the Hobbs Act robbery statute under 18 U.S.C. § 1951 provides that the offense can be accomplished by the act of placing another in fear of immediate or future injury. This action, at best, constitutes a threat of *injury* to another, which does not require the use or threatened use of "violent force." The Second Circuit's decision in *Chrzanoski v. Ashcroft*, 327 F.3d 188 (2d Cir. 2003), is directly on point. In that case, the Second Circuit examined the force clause of 18 U.S.C. § 16, "a provision which contains virtually identical language to § 924(c)(3)." *United States v. Acosta*, 470 F.3d 132, 134 (2d Cir. 2006). At issue in *Chrzanoski* was whether a prior Connecticut conviction for third degree assault qualified as a "crime of violence" under the force clause. The Connecticut statute "require[d] the state to prove that the defendant had intentionally caused physical injury." *Chrzanoski*, 327 F.3d at 193. The Second Circuit held that the statute does not constitute a crime of violence because "there is a difference between causation of an injury and an injury's causation by the use of physical force." *Id.* at 194 (internal quotation marks omitted). The Circuit explained that "an individual could be convicted of intentional assault in the third degree for injury caused not by physical force, but by guile, deception, or even deliberate omission." *Id.* at 195. The Court elaborated that "human experience suggests numerous examples of intentionally causing physical injury without the use of force, such as a doctor who deliberately withholds vital medicine from a sick patient." *Id.* at 195-56; *accord Persaud v. McElroy*, 225 F. Supp. 2d 420, 422 (S.D.N.Y. 2002) (holding state crime of causing physical injury to officer while in flight from police was not a crime of violence under force clause).

Therefore, *Chrzanoski* commands that Hobbs Act robbery, which can be accomplished by putting another in fear of physical injury, does not require "violent force." If the actual

causation of physical injury does not require physical force, as *Chrzanoski* recognized, certainly the *threat* of *future* injury does not require the use of physical force.  Other Circuits have thus noted a variety of ways a defendant can place another in fear of injury without using force, such as by threatening to poison that person.  *See United States v. Torres-Miguel*, 701 F.3d 165, 168-69 (4th Cir. 2012); *United States v. Cruz-Rodriguez*, 625 F.3d 274, 276 (5th Cir. 2010).  Many more examples can be easily imagined:  A defendant can place another in fear of injury by exposing that person to hazardous chemicals, locking the person in a car on a hot day, or leaving the person at an abandoned site without food or shelter.  *Cf. Dalton v. Ashcroft*, 257 F.3d 200, 207 (2d Cir. 2001) ("There are many crimes that involve a substantial risk of injury but do not involve the use of force.  Crimes of gross negligence or reckless endangerment, such as leaving an infant alone near a pool, involve a risk of injury without the use of force.").  The Second Circuit has even recognized that a defendant's "reputation alone could be sufficient" to "instill a fear of injury" within the meaning of Hobbs Act robbery.  *United States v. Santos*, 449 F.3d 93, 101 n.12 (2d Cir. 2005).  While a person's mere reputation could in some cases amount to a threat to use violent physical force, it need not do so to put a person "in fear of injury."  A defendant could, for example, have a reputation for putting drugs in people's drinks – a fact that would reasonably cause a person to fear injury, but would not equate to the threat of strong physical force.  Accordingly, Hobbs Act robbery can be accomplished without the use of force.

Hobbs Act robbery can also be accomplished by placing someone in fear of injury to her *property*.  This also does not require "violent force" against property under § 924(c)(3)(A), because it can be accomplished by many means short of strong physical force.  "The concept of 'property' under the Hobbs Act is an expansive one" that includes "*intangible assets*, such as rights to solicit customers and to conduct a lawful business." *United States v. Arena*, 180 F.3d

380, 392 (2d. Cir. 1999) (emphasis added) (citing 18 U.S.C. § 1951(a) and interpreting robbery definition that includes threats against physical violence against "persons 'or property'"), *abrogated in part on other grounds by Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393 (2003); *see also United States v. Local 560 of the Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen, and Helpers of Am.*, 780 F.2d 267, 281 (3d Cir. 1986) (the Circuits "are unanimous in extending Hobbs Act to protect intangible, as well as tangible property"); *United States v. Iozzi*, 420 F.2d 512, 514 (4th Cir. 1970) (sustaining conviction under Hobbs Act when boss threatened "to slow down or stop construction projects unless his demands were met."). Thus, Hobbs Act robbery can be committed via threats to cause a devaluation of some economic interest like a stock holding or to lower the value of one's real property by erecting a garish display next to it. Such threats to economic interests are certainly not threats of "violent force." Even injury to *tangible* property does not require the threat of violent force. One can threaten to injure another's property by spray painting her car or putting her passport through a shredder. It goes without saying that these actions do not require violent force.[2]

Because the "minimum criminal conduct necessary" to violate the Hobbs Act robbery statute does not require "violent force" against persons or property, it simply cannot qualify as a "crime of violence" under § 924(c)(3)'s force clause. *Jobson*, 326 F.3d at 372.

---

[2] It makes no difference to this analysis whether the possibility of violating the Hobbs Act robbery statute without violent physical force is slim or remote. Because the possibility exists, this Court cannot find that Hobbs Act robbery is a "crime of violence." For example, in *Torres-Miguel*, the Fourth Circuit did not cite to a single case in which an offense under the statute at issue was violated with the threat of poisoning or some other non-violent force; yet, the Fourth Circuit still found that, because the elements of the offense left open the possibility that one could be prosecuted under the statute for the use of non-violent force, the prior offense categorically failed to qualify as a "crime of violence." 701 F.3d at 171. Because the Hobbs Act robbery statute leaves open the same possibility, the Court should find the same here.

>   **B.     The Act of Putting Another in Fear of Injury Does Not Require an *Intentional* Threat of Violent Force Necessary under the § 924(c)(3)(A) Force Clause.**

The foregoing categorical analysis takes Hobbs Act robbery outside the definition of "crime of violence" under the force clause. But even more, the act of putting someone in fear of injury, as defined under the Hobbs Act robbery statute, does not constitute a "crime of violence" under the force clause, because it does not require an *intentional* threat of physical force. The Supreme Court has held that the verb "use" in the force clause of § 16(a) "requires active employment" and "most naturally suggests a higher degree of intent than negligent or merely accidental conduct." *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004). Similarly, in *Jobson*, the Second Circuit held that the verb "use" in § 16(b) (that statute's residual clause) "contemplates only *intentional* conduct and refers only to those offenses in which there is a substantial likelihood that the perpetrator will *intentionally* employ physical force." 326 F.3d at 373 (internal quotation marks omitted). The verb "use" in the force clause must be given the same meaning. *See United States v. Pornes-Garcia*, 171 F.3d 142, 147 (2d Cir. 1999) ("Normally, the same term appearing in different portions of a single act is taken to have the same meaning in each appearance . . . ."). Further, in *Dalton*, the Second Circuit firmly rejected the government's argument that driving while intoxicated could constitute a "crime of violence" under the force clause because it involved "speeding, crashing, harming others and/or possessing an out-of-control car." 257 F.3d at 206. That argument, the Circuit explained, "equated 'physical force' with an accident," a conflation the court rejected because "[a]lthough an accident may properly be said to involve force, one cannot be said to *use* force in an accident as one might use force to pry open a heavy, jammed door." *Id.* (emphasis in original). Accordingly, a crime of violence under the force clause requires the *intentional* use of physical force.

9

The "fear of injury" element under the Hobbs Act robbery statute, by contrast, does not require a defendant to intentionally place another in fear of injury. Therefore, it is missing the intentional *mens rea* necessary under the Second Circuit's precedent. Federal cases interpreting the "intimidation" element in the federal bank robbery statute (18 U.S.C. § 2113(a)) are instructive here. Federal bank robbery may be accomplished by "intimidation," which means placing someone in fear of bodily harm – the same action required under the Hobbs Act robbery statute. *See United States v. Woodrop*, 86 F.3d 359, 364 (4th Cir. 1996) ("intimidation" under federal bank robbery statute means "an ordinary person in the [victim's position] reasonably could infer a threat of *bodily harm* from the defendant's acts."); *see also United States v. Pickar*, 616 F.3d 821, 825 (8th Cir. 2010) (same); *United States v. Kelley*, 412 F.3d 1240, 1241 (11th Cir 2005) (same); *United States v. Higdon*, 832 F.3d 312, 315 (5th Cir. 1987) (same). It is plain that the "intimidation" element of federal bank robbery is missing the necessary intentional *mens rea*. "Intimidation" is satisfied under the bank robbery statute "whether or not the defendant actually intended the intimidation," as long as "an ordinary person in the [victim's] position reasonably could infer a threat of bodily harm from the defendant's acts." *Woodrup*, 86 F.3d at 36. *See also United States v. Yockel*, 320 F.3d 818, 821 (8th Cir. 2003) (upholding bank robbery conviction even though there was no evidence that defendant intended to put teller in fear of injury: defendant did not make any sort of physical movement toward the teller and never presented her with a note demanding money, never displayed a weapon of any sort, never claimed to have a weapon and, by all accounts, did not appear to possess a weapon); *Kelley*, 412 F.3d at 1244 ("Whether a particular act constitutes intimidation is viewed objectively, . . . and a defendant can be convicted under [federal bank robbery] even if he did not intend for an act to be intimidating."); *United States v. Foppe*, 993 F.2d 1444, 1451 (9th Cir. 1993) (same).

Thus, a defendant may be found guilty of federal bank robbery even though he did not intend to put another in fear of injury. It is enough that the victim reasonably fears injury from the defendant's actions – whether or not the defendant actually intended to create that fear. Due to the lack of such intent, federal bank robbery criminalizes conduct that does not require an intentional threat of physical force, and bank robbery categorically fails to qualify as a "crime of violence." Because the federal bank robbery "intimidation" element is defined virtually the same as the Hobbs Act robbery "fear of injury" element, it follows that Hobbs Act robbery also fails to qualify as a "crime of violence" under the Second Circuit's precedent requiring an intentional use of force.

In sum, Hobbs Act robbery is not a "crime of violence" under the § 924(c)(3)(A) force clause for two independent reasons. First, the statute does not require a threat of *violent force*. Second, the statute does not require the *intentional* threat of the same.

**I.  SECTION 924(c)(3)'S RESIDUAL CLAUSE IS UNCONSTITUTIONALLY VAGUE AND THUS CANNOT SUPPORT A CONVICTION UNDER THE STATUTE.**

Because Hobbs Act robbery fails categorically as a crime of violence under § 924(c)(3)'s force clause, it must be a crime of violence under § 924(c)(3)'s residual clause to sustain a conviction. But the residual clause suffers from the same flaws that compelled the Supreme Court to declare the residual clause of the Armed Career Criminal Act ("ACCA") void for vagueness in *Johnson v. United States*, 135 S. Ct. 2551 (2015). *Johnson* applies with equal force to the parallel "crime of violence" definition in § 924(c)(3)'s residual clause. Using § 924(c)(3)(B) to categorize a predicate conviction as a "crime of violence" therefore violates due process.

### A. *Johnson* Expressly Overruled the "Ordinary Case" Approach to Determining Whether a Felony Qualifies as a "Crime of Violence."

In *Johnson*, the Supreme Court examined the ACCA, which like § 924(c)(3), defines a "violent felony" based on two clauses – a "force" clause, and a "residual" clause that defines violent felony as a crime that "is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*." 18 U.S.C. § 924(e)(2)(B) (emphasis added). The Court recognized two features of the ACCA's residual clause that "conspire to make it unconstitutionally vague." 135 S.Ct. at 2557. First, the Court explained, the residual clause "requires a court to picture the kind of conduct that the crime involves 'in the ordinary case,' and to judge whether that abstraction presents a serious risk of potential injury." *Id.* (citation omitted). But, the Court held, the process of determining what is embodied in the "ordinary case" rather than "real-world facts" is fatally flawed, because "[g]rave uncertainty" surrounds the method of "determin[ing] the risk posed by the "judicially imagined 'ordinary case.'" *Id.* The Court noted that "[t]he residual clause offers no reliable way to choose between . . . competing accounts of what 'ordinary' . . . involves." *Id.* at 2558 (emphasis added). It considered and rejected different ways that a court might envision the hypothetical "ordinary case" since the statute offers no guidance. Specifically, the Court explained that a statistical analysis of reported cases, surveys, expert evidence, Google, and gut instinct are all equally unreliable in determining the "ordinary case." *Id.* at 2557 (citing *United States v. Mayer*, 560 F.3d 948, 952 (9th Cir. 2009) (Kozinski, J., dissenting from denial of rehearing *en banc*)). Although earlier ACCA cases tried to rely on statistical analysis and "common sense," the Supreme Court concluded that these methods "failed to establish any generally applicable test that prevents the risk comparison required by the residual clause from

devolving into guesswork and intuition." *Id*. at 2559. Accordingly, the residual clause "denies fair notice to defendants and invites arbitrary enforcement by judges." *Id.* at 2557.

Second, the Court stated, the ACCA's residual clause left "uncertainty about how much risk it takes for a crime to qualify as a violent felony." *Id*. at 2558. Although the level of risk required under the residual clause must be similar to the enumerated offenses (burglary, arson, extortion, or crimes involving use of explosives), *Johnson* rejected the notion that comparing a felony's "ordinary case" to the risk posed by certain enumerated offenses cures the constitutional problem. *Id.* The enumerated offenses failed to save the ACCA residual clause because, according the majority, comparing felonies to enumerated offenses similarly requires resorting to "a judicially imagined abstraction." *Id*. Before courts may even start the comparison, they must first determine what the "ordinary" enumerated crime entails. But the "ordinary" enumerated crimes, *Johnson* emphasized, like any other crime, "are far from clear in respect to the degree of risk each poses." *Id*. (internal quotation marks omitted). Any attempt to figure out the "ordinary" enumerated offense requires just as much guesswork as figuring out the "ordinary" predicate offense. By combining these two indeterminate inquiries, the Court held, "the residual clause produces more unpredictability and arbitrariness than the Due Process Clause tolerates." *Id.*

Thus, *Johnson* not only invalidated the ACCA's residual clause, but it invalidated the "ordinary case" analysis and statutory provisions that compel such an analytical framework. In other words, the only way to apply the residual clause is to use the "ordinary case" analysis, and the "ordinary case" analysis is impossible to apply in a constitutional manner.

      B.     *Johnson* **Means That § 924(c)(3)(B) Is Unconstitutionally Vague.**

The statutory phrase at issue in this case is essentially the same as the ACCA's residual clause. 18 U.S.C. § 924(e)(2)(B)(ii) and 18 U.S.C. § 924(c)(3)(B) are not identical: the ACCA's residual clause defines a "violent felony" as an offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another," while § 924(c)(3)(B) defines a crime of violence as one that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." Nonetheless, courts regularly compare the language of the ACCA's residual clause and the definition of "crime of violence" contained in 18 U.S.C. § 16(b), which, as noted above, "contains virtually identical language to § 924(c)(3)." *Acosta*, 470 F.3d at 134. *See, e.g., Chambers v. United States*, 555 U.S. 122 133, n.2 (2009) (Alito, J., concurring) (citing circuit splits on § 16(b) in the context of a residual clause case because § 16(b) "closely resembles ACCA's residual clause") (Alito, J., concurring); *United States v. Brown*, 629 F.3d 290, 296 (2d Cir. 2011) (noting that although prior holding with regard to § 16(b) does not control analysis of ACCA's residual clause, "the issue . . . is similar" and finding analysis of § 16(b) "instructive"); *United States v. Daye*, 571 F.3d 225, 234 n. 9 (2d Cir. 2009) (finding analysis of § 16(b) to be "helpful" in determining whether an offense is a "violent felony" under ACCA).[3]

Moreover, the linguistic differences between the two statutes have no impact on the constitutional analysis. Although the risk at issue in the ACCA is a risk of injury, and the risk at

---

[3] *See also United States v. Keelan*, 786 F.3d 865, 871 n.7 (11th Cir. 2015) (describing the ACCA otherwise clause and § 16(b) "analogous"); *United States v. Sanchez-Espinal*, 762 F.3d 425, 432 (5th Cir. 2014) (despite the fact that the ACCA talks of risk of injury and § 16(b) talks of risk of force, "we have previously looked to the ACCA in deciding whether offenses are crimes of violence under § 16(b)"); *Roberts v. Holder*, 745 F.3d 928, 930-31 (8th Cir. 2014) (using both ACCA cases and § 16(b) cases to define the same "ordinary case" analysis); *United States v. Ayala*, 601 F.3d 256, 267 (4th Cir. 2010) (relying on an ACCA case to interpret the definition of a crime of violence under § 924(c)(3)(B)).

issue in Section 924(c) is a risk that force will be used, this difference is immaterial to the due process problem and had no impact on the *Johnson* decision.[4] The Court's holding did not turn on the type of risk, but rather how a court assesses and quantifies the risk. That inquiry is the same under both the ACCA and § 924(c). Both the ACCA and § 924(c)(3)(B) require courts to discern what the ordinary case of a crime is by examining the elements using a categorical approach. *See, e.g., Acosta*, 470 F.3d at 134; *Evans v. Zych*, 644 F.3d 447, 453 (6th Cir. 2011); *United States v. Serafin*, 562 F.3d 1104, 1108 (10th Cir. 2009); *United States v. Green*, 521 F.3d 929, 932 (8th Cir. 2008); *United States v. Amparo*, 68 F.3d 1222, 1225 (9th Cir. 1995). Courts may not consider the factual means of committing any given offense, but must consider the nature of the offense in the "ordinary case," regardless of whether the ACCA, § 924(c)(3)(B), or § 16(b) is at issue. And both statutes require that once courts have pictured the "ordinary case" embodied by a crime, they must then decide if it qualifies as a crime of violence by assessing the quantum of risk posed by the "ordinary case." This is precisely the twin indeterminacy that proved fatal to the ACCA in *Johnson*.

For that reason, the two Circuits that have recently analyzed § 16(b) in light of *Johnson* have concluded that the residual clause of § 16(b) is void for vagueness. In *Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015), the Ninth Circuit noted that the language in the ACCA and that of § 16(b) (and § 924(c)(3)(B)) was similar, but more importantly, the court explained, "both the

---

[4] *See Jimenez-Gonzales v. Mukasey*, 548 F.3d 557, 562 (7th Cir. 2008) (noting that, "[d]espite the slightly different definitions," the Supreme Court's respective analyses of the ACCA and § 16(b) "perfectly mirrored" each other). *See also United States v. Gomez-Leon*, 545 F.3d 777 (9th Cir. 2008); *United States v. Coronado-Cervantes*, 154 F.3d 1242, 1244 (10th Cir. 1998); *United States v. Kirk*, 111 F.3d 390, 394 (5th Cir. 1997); *United States v. Bauer*, 990 F.2d 373, 374 (8th Cir. 1993) (describing the differences between the statutes as "immaterial" and that interpreting U.S.S.G. § 4.1.1, which uses the ACCA language, "is controlled by" a decision that interprets § 16(b)).

provision at issue here and the ACCA's residual clause are subject to the same mode of analysis. Both are subject to the categorical approach, which demands that courts look to the elements and the nature of the offense of conviction, rather than to the particular facts related to petitioner's crime." *Id.* at 1114 (internal quotation marks omitted). "Specifically," the court added, "courts considering both [statutes] must decide what a 'usual or ordinary violation' entails and then determine how great a risk of injury that 'ordinary case' presents." *Id.* at 1115. The Ninth Circuit explained that the residual clause of § 16 suffers from the same flaws that led the Supreme Court to invalidate the ACCA's residual clause in *Johnson*, namely that is requires courts to engage in the unguided task of imagining the "ordinary case" of an offense and then determining the necessary quantum of risk. *Id*.

Even more recently, the Seventh Circuit examined § 16(b) in light of *Johnson*, and held that its "language, though not identical to the [ACCA] residual clause, is materially the same." *United States v. Vivas-Ceja*, --- F.3d ---, No. 15-1770, 2015 WL 9301373, at *3 (7th Cir. Dec. 22, 2015). Regarding the first step of the categorical approach, the Seventh Circuit noted that § 16(b) – identically to § 924(c)(3)(B) – "substitutes the phrase 'by its nature' for the residual clause's 'otherwise involves conduct.'" *Id*. Those two phrases must be read synonymously, the court held, under the Supreme Court's decision in *Leocal v. Ashcroft*, 543 U.S. 1 (2004), which held that § 16(b) requires courts to consider whether an offense would "naturally involve a person acting in disregard of the risk that physical force might be used against another," *id.* at 10, which requires application of the categorical approach. *Vivas-Ceja*, 2015 WL 9301373, at *3. The next step in assessing § 16(b) – and § 924(c)(3)(B) – is to examine whether there exists "substantial risk" in the ordinary case, as opposed to the ACCA's "serious potential risk." The Seventh Circuit held that "[a]ny difference between these two phrases is superficial. Just like the residual clause, §

16(b) offers courts no guidance to determine when the risk involved in the ordinary case of a crime qualifies as 'substantial.'" *Id.* Accordingly, the Seventh Circuit held that *Johnson* commands that § 16(b) is unconstitutionally vague. *Id*. at *4.[5]

The rationale articulated by the Ninth and Seventh Circuits regarding § 16(b) applies with equal force to § 924(c)(3)(B). Section 16(b) and § 924(c)(3)(B) are identical. Indeed, in litigating *Johnson*, the government, through the Solicitor General, agreed that the phrases at issue in *Johnson* and here pose the same problem. In noting that the definitions of a crime of violence in both § 924(c)(3)(B) and § 16(b) are identical, the Solicitor General stated:

> Although Section 16 refers to the risk that force will be used rather than that injury will occur, it is equally susceptible to petitioner's central objection to the residual clause: Like the ACCA, Section 16 requires a court to identify the ordinary case of the commission of the offense and to make a commonsense judgment about the risk of confrontations and other violent encounters.

*Johnson v. United States*, S. Ct. No. 13-7120, Supplemental Brief of Respondent United States at 22-23 (available at 2015 WL 1284964 at *22-*23). The Solicitor General was right. Section 924(c)(3)(B) and the ACCA are essentially the same and contain the same flaws. *See United States v. Edmunson*, --- F. Supp. 3d ---, Criminal No. PWG-13-15, 2015 WL 9582736, at * (D. Md. Dec. 30, 2015) (holding that § 924(c)(3)(B) "suffers from exactly the same double indeterminacy as the ACC[A] residual clause"). This Court should hold the government to that concession.

---

[5] Both the Ninth and the Seventh Circuits rejected the government's arguments that *Johnson* did not compel the invalidation of § 16(b) because ACCA's residual clause included a list of enumerated offenses. Both decisions emphasized that *Johnson* made clear that the fundamental constitutional problem with ACCA's residual clause was the combination of the ordinary case determination and the assessment of the quantum of risk – features that exist equally in § 16(b) and § 924(c)(3)(B). *See id.* at *4; *Dimaya*, 803 F.3d at 1117-18.

17

Section 924(c)(3)(B), like the ACCA's residual clause, thus requires the "ordinary case" analysis to assess the risk involved in a predicate offense and how risky that ordinary case is. Because these are the identical analytical steps that brought down the ACCA's residual clause, § 924(c)(3)(B) cannot survive constitutional scrutiny under the due process principles reaffirmed in *Johnson*. As a consequence, the residual clause cannot support a conviction under § 924(c).

## CONCLUSION

Since Hobbs Act robbery under § 1951 categorically fails to qualify as a "crime of violence" under § 924(c)'s "force" clause, and § 924(c)'s residual clause is unconstitutionally vague, no legal basis exists for a § 924(c) conviction. For the foregoing reasons, Mr. Pena respectfully requests that the Court grant this Motion and dismiss Count II of the Indictment.

Respectfully submitted,

/s/_____
Michael Tremonte
Noam Biale
SHER TREMONTE LLP
80 Broad Street, 13th Floor
New York, NY 10004
Phone: (212) 202-2600
Fax: (212) 202-4156
Email: mtremonte@shertremonte.com

**CERTIFICATE OF SERVICE**

     I certify that on January 8, 2015, I electronically filed this motion on ECF, which sent a notice to all counsel of record.   Also, on the same day, I emailed a courtesy copy of the motion to AUSA Matthew Laroche.

/s/_____
Michael Tremonte