UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

United States of America,

-v-

Alberto Pena,

Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: FEB 11 2016

15-cr-551 (AJN)

OPINION
& ORDER

ALISON J. NATHAN, District Judge:

Before the Court is Defendant Alberto Pena's motion to dismiss Count II of the indictment—now Count III of the superseding indictment—which charges him with brandishing a firearm during a crime of violence, or aiding and abetting the same, 18 U.S.C. § 924(c)(1)(A)(ii) & 2. For the reasons set forth below, Pena's motion is DENIED.

## I.   Background

On August 18, 2015, the Government unsealed a two-count indictment charging Pena and six others with Hobbs Act Robbery, 18 U.S.C. § 1951 & 2, and brandishing a firearm during a crime of violence, 18 U.S.C. § 924(c)(1)(A)(ii) & 2. The indictment alleges that Defendants took part in a violent home invasion robbery in the Bronx on January 20, 2014, and that firearms were brandished during the robbery. Pena and four other codefendants were arrested, while two remain at large.

Trial for Pena is set to begin on February 29, 2016. On January 8, 2016, Pena moved to dismiss the firearms offense, Count II of the indictment. On January 28, 2016, the Government filed a superseding indictment, adding a count of conspiracy to commit Hobbs Act Robbery. Thus, Pena's motion is aimed at what is now Count III of the superseding indictment.

## II.   Legal Standard

Federal Rule of Criminal Procedure 12(b)(3)(B) permits a defendant to move to dismiss a count of the indictment for failure to state an offense. "Since federal crimes are solely creatures of statute, a federal indictment can be challenged on the ground that it fails to allege a crime

1

within the terms of the applicable statute." *United States v. Aleynikov*, 676 F.3d 71, 75–76 (2d Cir. 2012) (citation and internal quotation marks omitted). The construction of a federal statute is a question of law. *Id.*

### III. Analysis

Count III of the superseding indictment charges Pena with knowingly using or carrying firearms during and in relation to a crime of violence, or possessing firearms in furtherance of a crime of violence, or aiding and abetting the same, and that the firearms were brandished, under 18 U.S.C. § 924(c)(1)(A)(ii) & 2. Pena argues that the indictment fails to state an offense under 18 U.S.C. § 924(c) because the predicate charge of Hobbs Act robbery (*i.e.*, the crime of violence during which the Government alleges a firearm was carried and brandished) is not a crime of violence. Section 924(c) contains a two-part definition of a crime of violence. First, an offense is a crime of violence within the meaning of the statute if it is a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." *Id.* § 924(c)(3)(A) ("the Force Clause"). Second, an offense is a crime of violence if it is a felony "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *Id.* § 924(c)(3)(B) ("the Residual Clause"). Pena argues that Hobbs Act robbery is not a crime of violence under the Force Clause. He does not argue that it is not a crime of violence under the Residual Clause, but instead claims that the Residual Clause is void for vagueness under the Supreme Court's recent decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015) ("*Johnson* (U.S. 2015)").

### A. The Categorical Approach

In analyzing whether an offense is a crime of violence under Section 924(c)(3), courts in the Second Circuit apply the categorical approach. *United States v. Acosta*, 470 F.3d 132, 135 (2d Cir. 2006) (per curiam). Under the categorical approach, the court considers only "the intrinsic nature of the offense rather than . . . the circumstances of the particular crime" alleged in determining whether a predicate offense has as an element the use, attempted use, or threatened use of physical force against the person or property of another. *Id.* In doing so, the court looks for the minimum conduct to which there is a "realistic probability, not a theoretical possibility" that the statute would be applied. *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007); *see*

*Sampathkumar v. Holder*, 573 F. App'x 55, 57 (2d Cir. 2014) (applying realistic probability standard to elements test). If the defendant argues for an unusual or counterintuitive application of a statute, the "realistic probability" standard cannot be met through "application of legal imagination" alone. *Duenas-Alvarez*, 549 U.S. at 193. "To show that realistic probability," the defendant must point to a case in which the "courts in fact did apply the statute" in the manner he claims they would. *Id.*

Much of the case law interpreting what is and is not a crime of violence under the categorical approach was created in the context of 18 U.S.C. § 16, a statute defining crimes of violence in language "virtually identical" to Section 924(c)(3). *Acosta*, 470 F.3d at 134. The Second Circuit applies case law interpreting Section 16 to the Force Clause and Residual Clause of Section 924(c)(3). *See id.* at 134–35.

If a criminal statute is divisible, the court will apply what is known as the modified categorical approach. A divisible statute is one that "sets out one or more elements of the offense in the alternative." *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013). If some, but not all, of the alternative elements would produce a crime of violence, the court is permitted to modify the categorical approach by looking at a limited set of documents (including the indictment) to determine under which portion of the statute the defendant was charged. *See id.* The court then applies the categorical approach as normal to the portion of the statute actually at play in the case. *See id.*; *see also United States v. Barker*, 723 F.3d 315, 319–20 (2d Cir. 2013).

The Government argues that the Hobbs Act is a divisible statute, and that the modified categorical approach should apply. The Government observes that Section 1951(a) prohibits at least two crimes in the alternative, robbery and extortion. Gov't Br. at 6 n.4. This is true enough, but it does not provide any benefit to the Government. The modified categorical approach simply serves to identify which part of a divisible statute a defendant was charged under. All it would enable the Court to do in this case is to look to the indictment and see that Pena is charged with robbery rather than extortion, something that Pena does not contest. *See Descamps*, 133 S. Ct. at 2281. Pena's argument is instead that robbery as defined in Section 1951(b)(1) does not meet the requirements of the Force Clause. Since the Government does not argue that the Hobbs Act definition of robbery is itself divisible, the modified categorical approach has no bearing here. The Court will apply the standard categorical approach to Hobbs Act robbery in the analysis that follows.

3

### B. The Meaning of "Physical Force" in 18 U.S.C. § 924(c)(3)

In order to determine whether Hobbs Act robbery is categorically a crime of violence under either the Force Clause or the Residual Clause, it is first necessary to understand the meaning of Section 924(c)(3)'s central term, "physical force." Neither the Supreme Court nor the Second Circuit have interpreted the phrase "physical force" in Section 924(c)(3), but the Second Circuit has done so in the context of Section 16. The Second Circuit gives the word "force" in Section 16 its "ordinary meaning" of "power, violence, or pressure directed against a person or thing." *Santana v. Holder*, 714 F.3d 140, 144 (2d Cir. 2013) (citing Black's Law Dictionary ("Black's") 656 (7th ed. 1999)). It defines a "physical force" as "an influence acting within the physical world, a force of nature." *Id.* These are the definitions that this Court will apply to the language of the Force Clause. *See Acosta*, 470 F.3d at 134–35 (applying interpretation of Section 16 to the "virtually identical" Section 924(c)(3)).

Pena argues in his briefing for a different and more demanding definition of force. Relying on the Supreme Court's decision in *Johnson v. United States*, 559 U.S. 133 (2010),[1] Pena argues that the use of physical force in the Force Clause refers specifically to "strong physical force" or "violent force," defined in *Johnson* as "force capable of causing physical pain or injury to another person." *Id.* at 140. However, *Johnson* does not displace the Second Circuit's definition of the word "force" in favor of a heightened standard, as a brief review of the *Johnson* decision will make clear.

*Johnson* is a decision interpreting the force clause of the Armed Career Criminal Act, 18 U.S.C. § 924(e) ("ACCA"), a statutory provision written similarly to the Force Clause of Section 924(c)(3). The question in *Johnson* was whether Florida's felony offense of battery, a statute that could be satisfied by the slightest touch on the shoulder, was a violent felony under ACCA's version of the Force Clause, 18 U.S.C. § 924(e)(2)(B)(i). *Johnson*, 559 U.S. at 138. The Supreme Court held that it was not.

In interpreting the phrase "physical force" in the ACCA, the Court first noted that the word "physical" "is clear in meaning but not of much help to our inquiry. It plainly refers to force exerted by and through concrete bodies—distinguishing physical force from, for example,

---

[1] This opinion cites two other cases captioned *Johnson v. United States*. All citations or references to "*Johnson*" without further identification refer to this 2010 Supreme Court decision. Citations to the other similarly-captioned cases will be clearly identified whenever made.

4

intellectual force or emotional force." *Id.* Turning to the word "force," the Court adopted the word's general usage definition, just as the Second Circuit in *Santana* did for Section 16. *Id.* at 139. The Court looked to two sources for the general usage definition. First, it turned to Webster's New International Dictionary 986 (2d ed. 1954) ("Strength or energy; active power; vigor; often an unusual degree of strength or energy," "[p]ower to affect strongly in physical relations," or "[p]ower, violence, compulsion, or constraint exerted upon a person."). And second, like the Second Circuit, it invoked the definition from Black's 717 (9th ed. 2009) (defining "force" as "[p]ower, violence, or pressure directed against a person or thing," and "physical force" as "[f]orce consisting in a physical act, esp[ecially] a violent act directed against a robbery victim."). The Supreme Court rejected as a definition the meaning of force in the elements of battery, a common law term of art "satisfied by even the slightest offensive touching." *Johnson*, 559 U.S. at 139. Instead, it defined "physical force" in the ACCA force clause to mean "strong physical force" or "*violent* force—that is, force capable of causing physical pain or injury to another person." *Id.* at 140.

Pena puts weight on *Johnson*, arguing that it creates a heightened standard for "force" in evaluating crimes of violence, and asks the Court to apply that standard here. But *Johnson* does not create a more demanding definition of "physical force" than the one employed by the Second Circuit to interpret Section 16. *Johnson* relied in significant part on the same definition of force that the Second Circuit already applies in such cases, and the Florida statute analyzed in *Johnson* could be violated by a slight touch on the shoulder—behavior that would not seem to qualify as "power, violence, or pressure directed against a person or thing." *Johnson* holds that "force" in the ACCA force clause requires more than minimal or slight force, and this holding is compatible with the definition of "force" used by the Second Circuit in interpreting Section 16, and by extension, Section 924(c)(3).[2]

---

[2] In a case not cited by the parties, *Blake v. Gonzales*, 481 F.3d 152 (2d Cir. 2007), the Second Circuit did apply Section 16(a) to a statute requiring only the "use of force upon the person of another, however slight." *Id.* at 159–60. *Blake* did not discuss the definition of "force," however, and its precedential value would seem to be compromised by *Johnson*. Even if it were not, *Johnson* would make it difficult to apply *Blake* in the Section 924(c)(3)(A) context. Although Section 924(c)(3)(A) is written very similarly to Section 16(a), the former applies only to felonies, while the latter covers misdemeanors. One of *Johnson*'s major reasons for rejecting the "offensive touching" definition of force in the context of the ACCA was that "offensive touching" derives from the common law offense of battery, a misdemeanor, and is inappropriate for evaluating violent *felonies*. 559 U.S. at 141. The same analysis would apply to Section 924(c)(3)(A), even if it does not apply to Section 16(a), the statute at issue in *Blake*.

5

In the alternative, to the extent that *Johnson* does suggest a heightened standard such that an extreme degree of force is necessary to meet the ACCA force clause, the Court would not apply that standard here for two reasons. First, the Second Circuit has never applied *Johnson* to Section 16 or to Section 924(c)(3). In the Section 16 context, the Second Circuit began using the "power, violence, or pressure" definition before *Johnson*, *see Chrzanoski v. Ashcroft*, 327 F.3d 188, 192 (2d Cir. 2003), and has continued to do so without interruption in *Johnson*'s wake, *see Santana*, 714 F.3d at 144. Second, insofar as *Johnson* requires a heightened standard for "force," that standard should not be applied directly to Section 16 or Section 924(c) due to textual differences between those statutes and the ACCA. *Johnson*'s definition of "violent force" as "force capable of causing physical pain or injury to another person," 559 U.S. at 140, is tailored to the ACCA force clause's definition of a "violent felony." A "violent felony" under the ACCA force clause is defined as any felony that "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). But Sections 16(a) and 924(c)(3)(A) employ different and broader terms, defining as a crime of violence any felony that "has as an element the use, attempted use, or threatened use of physical force against the person *or property* of another." *Id.* (emphasis added). A statute that can be violated by the use of physical force against property is satisfied when sufficient force to damage property is used, even if that force is not enough to cause physical pain or injury to a human body. For example, consider a purse snatching in which the offender tears the purse off the victim's shoulder, breaking the strap in half in the process. Although the force exerted on the victim's body may be minimal, the force exerted on the property is violent—even if the same degree of force might not have been sufficient to injure the victim's body if applied to her directly. Accordingly, if the Court were to apply *Johnson*'s formulation of "violent force" to Section 924(c)(3), the Court would need to expand it to cover "force capable of causing physical pain or injury to another person," 559 U.S. at 140, *or to the property of another*. Nevertheless, as stated above, the Court interprets the word "force" in Section 924(c)'s "physical force" term to mean "power, violence, or pressure directed against a person or thing." *See Santana*, 714 F.3d at 144.

### C. The Force Clause

With that definition in mind, the Court turns to the predicate crime at issue in this case and considers whether Hobbs Act robbery is a crime of violence under the Force Clause of

6

Section 924(c)(3). The Court's categorical analysis of whether Hobbs Act Robbery "has as an element the use, attempted use, or threatened use of physical force against the person or property of another," 18 U.S.C. § 924(c)(3)(A) (for brevity, hereinafter abbreviated as "Section 924(c) force"), turns next on the statutory text of the Hobbs Act. The Hobbs Act defines robbery as

> [T]he unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

18 U.S.C. § 1951(b)(1). For present purposes, the key element of this statute is the means used to conduct the robbery: "by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property . . . ." *Id.* If this element of Hobbs Act robbery can be satisfied by conduct not rising to the level of Section 924(c) force, then the statute is not a crime of violence under the Force Clause.

The question of whether Hobbs Act robbery is a crime of violence under the Force Clause has not been resolved by the Second Circuit, although the Second Circuit has stated that violence or the threat of violence is an element of Hobbs Act robbery.[3] *United States v. DiSomma*, 951 F.2d 494, 496 (2d Cir. 1991) ("[I]f the element of violence is not present, no conviction under section 1951 [for robbery] can occur."); *VAM Check Cashing Corp. v. Fed. Ins. Co.*, 699 F.3d 727, 730 n.2 (2d Cir. 2012) (characterizing Hobbs Act robbery as "limit[ing] the crime to larcenies committed by force or threat of force."). The Second Circuit has also said expressly that federal bank robbery under 18 U.S.C. § 2113(a), which is defined similarly to Hobbs Act Robbery, is a crime of violence under the Force Clause. *Johnson v. United States*, 779 F.3d 125, 128–29 (2d Cir. 2015) ("*Johnson* (2d Cir. 2015)"). Although no other court of

---

[3] Two appeals raising the question of whether Hobbs Act robbery is a crime of violence under the Force Clause are currently pending before the Second Circuit: *United States v. Hill*, No. 14-3872 (2d Cir. 2016), and *United States v. Barrett*, No. 14-2641 (2d Cir. 2016). Prior to 2015, the argument that Hobbs Act robbery is not a crime of violence under 18 U.S.C. § 924(c)(3) would have been futile because (as Pena does not seek to contest) robbery is an offence "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense" under the Residual Clause, *id.* § 924(c)(3)(B). *See, e.g., United States v. Elder*, 88 F.3d 127, 128 (2d Cir. 1996). However, on June 26, 2015, the Supreme Court decided *Johnson* (U.S. 2015), 135 S. Ct. 2551. *Johnson* (U.S. 2015) held that the residual clause of the definition of "violent felony" in the ACCA, 18 U.S.C. § 924(e)(2)(B)(ii), was void for vagueness. *Johnson* (U.S. 2015) opened the door for defendants to challenge the constitutionality of similarly-worded crime of violence residual clauses in other statutes, including Section 924(c)(3). In order to benefit from the argument that the Residual Clause is unconstitutional, a defendant accused of Hobbs Act robbery would need to demonstrate that the offense is not a crime of violence under the Force Clause either. Thus, the Force Clause has also become a subject of recent litigation.

7

appeals has considered Pena's argument, two have stated that Section 924(c) force is an element of Hobbs Act robbery. *See United States v. Mendez*, 992 F.2d 1488, 1491 (9th Cir. 1993) (Hobbs Act robbery is "indisputably" a crime of violence under the Force Clause); *United States v. Farmer*, 73 F.3d 836, 842 (8th Cir. 1996) (Hobbs Act robbery "has as an element the use, attempted use, or threatened use of physical force against the person of another"). Further, the district courts that have expressly considered Pena's claim have uniformly rejected it, holding that Hobbs Act robbery is a crime of violence under the Force Clause, 18 U.S.C. § 924(c)(3)(A). *See United States v. Crawford*, No. 3:15-CR-070, 2016 WL 320116, at *3 (N.D. Ind. Jan. 27, 2016) (collecting cases).

In the absence of supporting authority, Pena proceeds by targeting two of the statutory means of committing robbery, and arguing that they encompass a wider range of conduct than Section 924(c) force. First, Pena argues that the word "force" in the Hobbs Act refers to a lower degree of force than Section 924(c) requires. Second, Pena argues that Hobbs Act robbery accomplished through "fear of injury" need not involve the threat of force at all, or need not involve an intentional threat of force. These arguments do not persuade the Court.

### 1. "Force" in Hobbs Act Robbery

Pena argues that Hobbs Act robbery does not meet the criterion of the Force Clause because the word "force" in the former has a different, less severe meaning than Section 924(c) force. Pena argues that "force" in the Hobbs Act (hereinafter "Hobbs Act force") refers to mere offensive touching—the definition of "force" used in the common law offense of battery, rejected by the Supreme Court in *Johnson*, 559 U.S. at 140. Because Hobbs Act robbery, in Pena's reading, can be committed without Section 924(c) force, it is not a crime of violence under the Force Clause. The Court rejects Pena's argument. His interpretation of Hobbs Act force is unpersuasive, and the case law he presents fails to establish a "realistic probability" that Hobbs Act robbery would be applied to conduct not involving Section 924(c) force.

#### a. Statutory Interpretation

The most sound interpretation of the Hobbs Act is that the word "force" means "power, violence, or pressure directed against a person or thing," just as it does in Section 924(c)(3). In the absence of a statutory definition of "force" in the Hobbs Act, the Court supplies the word with its ordinary meaning. *Santana*, 714 F.3d at 144. In this case, the Second Circuit has

8

already stated that the ordinary meaning of force is the "power, violence, or pressure" definition from Black's also relied on in *Johnson*. *Id.* And this definition, *Johnson* explained, means that the word "force" alone "normally connotes force strong enough to constitute 'power.'" 559 U.S. at 142.

Pena argues that this Court should instead interpret Hobbs Act force to mean "offensive touching," the common law definition used in battery that the Supreme Court rejected as inapplicable to the ACCA in *Johnson*. His textual justification is that Hobbs Act force should be read to have a meaning independent from "violence" in the same clause, and therefore Hobbs Act force should be understood as less-than-violent force. *See Aleynikov*, 676 F.3d at 81 ("[A] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant."). There are several problems with this argument. First, it does not make the two terms satisfactorily independent. Violence means "[t]he use of physical force, usu[ally] accompanied by fury, vehemence, or outrage; esp[ecially] physical force unlawfully exercised with the intent to harm." Black's 1705 (9th ed. 2009). If "force" means any force, no matter how slight, that includes violence and makes "violence" surplus." Second, interpreting "force" to mean less-than-violent force is not the only or the best way to give force meaning beyond violence. The Second Circuit's definition of force offers two other meanings that go beyond what is encompassed by violence: power and pressure. Third, the most natural way to read the means of committing Hobbs Act robbery is not as a list of alternate elements with separate meanings (in which case the statute might well become divisible), but as a series of overlapping words meant to capture a range of conduct. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 861 (1984) ("[T]he meaning of a word must be ascertained in the context of achieving particular objectives, and the words associated with it may indicate that the true meaning of the series is to convey a common idea."). The fact that the statute lists both force and violence does not establish that the lower bound of that range is mere "offensive touching."

Pena's next argument is that Hobbs Act robbery is a codification of common law robbery, and therefore force should be given its common law meaning—which he argues is the "offensive touching" definition used in common law battery. It is undoubtedly true that Hobbs Act robbery is based on the traditional definition of robbery. *See, e.g., Farmer*, 73 F.3d at 842 ("[R]obbery is defined in § 1951(b)(1), in terms consistent with the traditional common law

9

definition, as the unlawful taking of personal property from the person or in the presence of another by force or violence."). Specifically, its text was taken almost verbatim from the New York robbery statute in existence at the time the Hobbs Act was passed. *United States v. Nedley*, 255 F.2d 350, 355 (3d Cir. 1958) (reviewing legislative history). But it does not follow from this history that Hobbs Act force shares the definition of force used in the common law offense of battery.

The phrase "offensive touching" (nor its variations "mere" "intentional," or "unpermitted" touching) has never been adequate force for the purposes of robbery, and Pena presents no evidence or case law to establish such a connection. On the contrary, the force element of robbery has traditionally been identified with strong or violent force. *See* 3 Edward Coke, *Institutes* *68 (defining robbery as "a felony by the common law, committed by a violent assault, upon the person of another, by putting him in fear, and taking from his person his money or other goods of any value whatsoever"); 4 William Blackstone, *Commentaries* *241 (defining robbery as "the felonious and forcible taking, from the person of another, of goods or money to any value, by violence or putting him in fear"); *see also, e.g.*, *McCloskey v. People*, 5 Parker's Crim. 299, 307 (N.Y. Sup. Ct. 1862) ("The property must be taken by violence to the person, which means more than a simple assault and battery."). Nor has this common law meaning changed in the intervening centuries. *See* Black's 1443 (9th ed. 2009) (defining robbery as "[t]he illegal taking of property from the person of another, or in the person's presence, by violence or intimidation"); *id.* at 717 (defining "physical force" as "[f]orce consisting in a physical act, esp[ecially] a violent act directed against a robbery victim."). Accordingly, the Court concludes that the context of the Hobbs Act supports applying the plain meaning definition to Hobbs Act force, and does not support applying the common law battery "offensive touching" definition.

### b. Case Law

Unsuccessful in marshalling the text, history, and context of the Hobbs Act in support of his argument, Pena next points the Court to cases that he claims demonstrate a "realistic probability" that courts would apply Hobbs Act robbery to conduct not involving Section 924(c) force. But here the Court concludes that a "realistic probability" has not been established. Pena first cites to *United States v. Hollins*, 514 F. App'x 264 (3d Cir. 2013), which held that a

10

Pennsylvania robbery offense criminalizing one who "physically takes or removes property from the person of another by force however slight" was not a crime of violence under the force clause of U.S.S.G. § 4B1.2(a)(1), a sentencing guideline written similarly to the ACCA force clause. *Id.* at 266. The Pennsylvania Supreme Court had interpreted the statute's wording to mean that "[t]he degree of actual force is immaterial" in committing the crime. *Id.* at 267 (alteration in original). *Hollins* is not relevant because in that case both the statutory text and an interpretation from the state's highest court established that a negligible degree of force was sufficient for a conviction. Neither is true regarding Hobbs Act robbery.

More relevant is *United States v. Bell*, No. 15-CR-00258, 2016 WL 344749, at *9 (N.D. Cal. Jan. 28, 2016), in which the district court held that 18 U.S.C. § 2112 (criminalizing "[w]hoever robs or attempts to rob another of any kind or description of personal property belonging to the United States") is not a crime of violence under the Force Clause because there is a realistic probability that Section 2112 will be applied to nonviolent conduct. *Bell* and *Pena* both rely in turn on *United States v. Rodriguez*, 925 F.2d 1049 (7th Cir. 1991), a case interpreting yet another federal robbery statute, 18 U.S.C. § 2114(a) (robbery of government property from one in lawful charge of it). In *Rodriguez*, the defendant stole a ring of keys by pulling off a key chain attached to the victim's clothing. *Id.* at 1051. The Seventh Circuit held that although the force used was "rather minimal," it was sufficient to sustain a conviction under Section 2114. *Id.* at 1052.

The Court acknowledges that the applicability of *Rodriguez* to the Hobbs Act is a close question. The decision in *Rodriguez* is not *sui generis*, but instead stems from a line of common law robbery cases holding that a snatching becomes robbery "when the item taken is 'so attached to the person or his clothes as to require some force to effect its removal.'" *Id.* at 1051 (quoting 2 Wayne LaFave, *Substantive Criminal Law* § 8.11(d)(1) (1st ed. 1986) (citing cases)). Such fact patterns generally involve actual injury to person or property—a necklace snapped, a watch chain broken off, an earring ripped out of an ear. *See* LaFave, *supra*. The Court is quite comfortable describing such situations as involving "power, violence, or pressure, directed against a . . . thing" (under the Second Circuit definition), or "force capable of causing physical . . . injury" to the property of another (paraphrasing *Johnson*, 559 U.S. at 140), or simply the "use . . . of physical force against the . . . property of another," in the unadorned words of the Force Clause. However, some courts considering common law robbery have held

11

that so long as "the force used is sufficient to overcome resistance, the particular degree of violence employed is immaterial as an element of the crime." 77 C.J.S. Robbery § 23 (citing cases). Under that standard, as long as there is *some* resistance overcome by force, the degree of force necessary can be minimal. Although the facts of *Rodriguez* are not entirely clear from the opinion, *Rodriguez* appears to be close to that position.

Despite *Rodriguez*, the Court is not persuaded that there is a "realistic probability" that Hobbs Act robbery would be applied to conduct not involving Section 924(c) force. Section 2114(a) is a substantially different statute from the Hobbs Act. At the time of *Rodriguez*, it read as follows:

> Whoever assaults any person having lawful charge, control, or custody of any mail matter or of any money or other property of the United States, with intent to rob, steal, or purloin such . . . property of the United States, or robs any such person of . . . property of the United States, shall, for the first offense, be imprisoned not more than ten years; and if in effecting or attempting to effect such robbery he wounds the person having custody of such . . . property of the United States, or puts his life in jeopardy by the use of a dangerous weapon, . . . shall be imprisoned not more than twenty-five years.

*Rodriguez*, 925 F.2d at 1051 n.2 (alterations in original). This statute differs from the Hobbs Act in important ways. First, Section 2114(a) sweeps more broadly than Hobbs Act robbery, incorporating assault, a crime which "as proscribed by the statute includes either an attempted battery or the placing of another in reasonable apprehension of bodily harm." *United States v. Hasan*, 983 F.2d 150, 151 (9th Cir. 1992) (per curiam) (quoting *United States v. Lawrence*, 699 F.2d 697, 702 (7th Cir. 1983)). Thus, Section 2114(a) blurs the line between the force required for robbery and the force required for battery. Second, in contrast with the Hobbs Act, neither Section 2114(a) nor Section 2112 include a definition of robbery, which means (for instance) that there is no statutory element of "force" that must be met. These statutes therefore have much more flexibility to incorporate state robbery case law that is not reconcilable with the definition of robbery stated explicitly in the Hobbs Act. For these reasons, the Court is unwilling to apply case law interpreting Section 2114(a) directly to the Hobbs Act.

The Court's view that there is no "realistic probability" that the Hobbs Act would be applied to minimally-forceful conduct becomes much stronger when one takes a step back and considers the broader landscape of case law. First, as noted above, the Second Circuit has stated that Hobbs Act robbery, and 18 U.S.C. § 2113(a), the similarly-worded federal bank robbery statute, entail the use of Section 924(c) force and are crimes of violence under the Force Clause.

12

*See DiSomma*, 951 F.2d at 496; *Johnson* (2d Cir. 2015), 779 F.3d at 128–29. Second, every district court to consider the question has held that the Hobbs Act requires the use of Section 924(c) force. *See Crawford*, 2016 WL 320116, at *3. Finally, and most importantly, Pena has presented *not a single case* applying Hobbs Act robbery to conduct involving mere touching or any other variation on the minimal use of force. Nor has the Court found such a case through its own research. To meet the "realistic probability" standard, Pena must point to case law in which the "courts in fact did apply the statute" at issue in the manner he claims they would. *Duenas-Alvarez*, 549 U.S. at 193. Pena's citations to cases decided under other robbery statutes do not create a "realistic probability" that Hobbs Act robbery will be applied to conduct that falls outside Section 924(c)(3)(A), so Pena has failed to meet the standard.

### 2. "Fear of Injury" in Hobbs Act Robbery

Pena's remaining arguments center on the phrase "fear of injury" in the Hobbs Act. Pena claims that a defendant can commit a robbery through fear of injury that would not involve the threat of Section 924(c) force in two ways. First, he claims that it is possible to intentionally cause injury to a person or property without the use of force, and that a robbery accomplished by threatening such an injury would be a robbery accomplished through fear of injury without Section 924(c) force. Second, Pena argues that the Force Clause requires an *intentional* use of force. He claims that Hobbs Act robbery does not meet the requirements of the Force Clause because it applies to robberies in which the defendant created fear of injury unintentionally. The Court rejects both arguments.

#### a. "Fear of Injury" in 18 U.S.C. § 1951(b)(1) Means Fear of Injury From the Use of Force

Pena argues that Hobbs Act robbery is not covered by the Force clause because it is possible to put someone in fear of injury without the threat of force. If so, it fails the categorical approach. In making this argument, Pena chiefly relies on *Chrzanoski v. Ashcroft*, 327 F.3d 188 (2d Cir. 2003). In *Chrzanoski*, the Second Circuit applied the categorical approach and held that the Connecticut misdemeanor offense of third degree assault was not covered by the force clause of Section 16. In relevant part, the Connecticut statute stated that a person is guilty of assault in the third degree if "[w]ith intent to cause physical injury to another person, [the perpetrator] causes such injury to such person or to a third person." Conn. Gen. Stat. § 53a-61(a)(1).

13

Explaining that injuries could intentionally be caused through "guile, deception, or even deliberate omission," the Second Circuit held that "the intentional causation of injury does not necessarily involve the use of force," and therefore the statute's elements did not require the use of force. *Chrzanoski*, 327 F.3d at 195. Because injury can be caused without the use of force, Pena claims, fear of injury as required by the Hobbs Act can therefore be created without the threat of force.

The logic of *Chrzanoski* does not apply in this case because the text, history, and context of the Hobbs Act compel a reading of the phrase "fear of injury" that is limited to fear of injury from the use of force. Unlike the statute in *Chrzanoski*, the Hobbs Act provides a list of means by which robbery can be committed: "actual or threatened force, or violence, or fear of injury." 18 U.S.C. § 1951(b)(1). Pena argues that "fear of injury" must mean something other than "actual or threatened force, or violence," otherwise it would be surplus—and therefore it must have a meaning beyond fear of force. However, as discussed above, it is impossible to read the statute to avoid all surplus. The terms "actual or threatened force, or violence, or fear of injury" are overlapping, and do not necessarily each have a wholly discrete meaning.

In determining what kind of injury is contemplated by the phrase "fear of injury," therefore, the Court turns to a canon of construction used to parse lists of overlapping terms. Under the doctrine of *noscitur a sociis*, "a word is known by the company it keeps." *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995). "That several items in a list share an attribute counsels in favor of interpreting the other items as possessing that attribute as well." *Beecham v. United States*, 511 U.S. 368, 371 (1994). In this case, the first three items in the list—actual force, threatened force, and violence—all involve force. The Court therefore interprets fear of injury to share this attribute, meaning that it is best understood as fear of injury *from the use of force*. Cf. *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307 (1961) (interpreting "discovery," in a three-item list with "exploration" and "prospecting," to be limited to discovery of mineral resources). Although the Court does not believe that "fear of injury" requires a meaning discrete from "threatened force," under the Court's reading the former does in fact cover additional ground. Specifically, the "fear of injury" language enables the Hobbs Act to reach robberies where the defendant did not make a threat, but nonetheless intentionally instilled or exploited the victim's fear of injury from the use of force. See *United States v. Santos*, 449 F.3d 93, 100–01 & n.12 (2d

Cir. 2005) (stating that defendant could use violent reputation in criminal underworld to commit robbery through fear of injury).

The history of the Hobbs Act supports this reading. As noted above, Hobbs Act robbery is modeled on common law robbery, and robbery implies "the notion of a forcible dispossession of property." *United States v. Standberry*, No. 3:15CR102, 2015 WL 5920008, at *4 (E.D. Va. Oct. 9, 2015). The generic definition of robbery, widely reflected in state law, is "the taking of property from another person or from the immediate presence of another person by force *or* by intimidation." *United States v. Walker*, 595 F.3d 441, 446 (2d Cir. 2010); *see* Black's 1443 (9th ed. 2009) (robbery is "[t]he illegal taking of property from the person of another, or in the person's presence, by violence or intimidation"). And in the definition of robbery, "[i]ntimidation is the threat of the use of force." *United States v. Brown*, 437 F.3d 450, 452 (5th Cir. 2006) (quoting *United States v. Presley,* 52 F.3d 64, 69 (4th Cir. 1995)). Even where common law definitions of robbery use the word "fear" in place of intimidation, the sentence structure frequently makes clear that "fear" means the fear of force or violence. *See, e.g.*, Blackstone, *supra*, at *241 ("[B]y violence or putting him in fear."); *United States v. Santiesteban-Hernandez,* 469 F.3d 376, 380 (5th Cir. 2006), *abrogated on other grounds by United States v. Rodriguez*, 711 F.3d 541 (5th Cir. 2013) ("The majority of states require property to be taken from a person or a person's presence by means of force or putting in fear."). In such formulations, "[t]he 'putting in fear' cannot be easily distinguished from the violence threatened; rather it is an amplification of the required violent assault." *United States v. Evans*, No. 5:15-CR-57, 2015 WL 6673182, at *5 (E.D.N.C. Oct. 20, 2015).

Furthermore, the words "fear of injury" must be read in the context of the rest of Section 1951(b)(1), *i.e.*, in the context of a statute prohibiting robbery. The purpose of the *noscitur a sociis* canon invoked above is to ensure that statutory terms are "understood against the background of what Congress was attempting to accomplish." *Gustafson*, 513 U.S. at 575. Insofar as there is any ambiguity on that point, the Supreme Court has analyzed the legislative history of the Hobbs Act at length, and concluded that a significant congressional concern in passing the statute was to create a federal version of the standard crimes of robbery and extortion that would not present unusual or unexpected applications. *See United States v. Culbert*, 435 U.S. 371, 378 (1978). It is unlikely that Congress intended to use the last of a series of overlapping terms to expand an otherwise-straightforward codification of a well-understood

15

crime to cover the breadth of novel ground Pena proposes. *See infra* (discussing Pena's examples and hypotheticals).

Additionally, the text of the Hobbs Act robbery provision focuses on physical proximity. The taking must be "from the person or in the presence" of the victim, and if the threat is not to the victim or his family it must be to someone "in his company at the time of the taking." 18 U.S.C. § 1951(b)(1). The statute's emphasis on proximity to the victim implies that the threatened injuries are of the sort that require proximity—*i.e.*, injuries from the use of force. By comparison, the offense of extortion is defined under the Hobbs Act as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." *Id.* § 1951(b)(2). Unlike Hobbs Act robbery, Hobbs Act extortion does not include any terms requiring or indicating physical proximity in the commission of the crime—and accordingly, the crime may be accomplished more generally by use of "fear," in place of the robbery provision's more specific requirement of "fear of injury." In this regard it is noteworthy but unsurprising that the example Pena presents of purely economic, rather than physical threats being prosecuted under the Hobbs Act, concerns extortion rather than robbery. *See* Pena Br. at 8 (citing *United States v. Iozzi*, 420 F.2d 512, 514 (4th Cir. 1970)).

For these reasons, the Court joins the district court in *Crawford*, 2016 WL 320116, at *3, and many other district courts cited in that decision, in holding that "fear of injury" in Section 1951(b)(1) refers to fear of injury from the use of force.

### b. Pena's Examples Fail to Show a Realistic Probability that Section 1951(b)(1) Would Be Applied to Conduct Not Involving the Use of Force

In addition to his reliance on the holding of *Chrzanoski*, Pena also proposes a series of methods by which a defendant could cause injury without the use of force. If Pena can show a "realistic probability" that Hobbs Act robbery extends to cover robbery by the fear of injury not caused by force, he will have demonstrated that Hobbs Act robbery is not categorically a crime of violence under the Force Clause of Section 924(c)(3). The court in *Chrzanoski* stated that a person could intentionally cause a physical injury to another without force through "guile, deception, or even deliberate omission." *Chrzanoski*, 327 F.3d at 196. It offered one hypothetical example, a doctor who deliberately withholds vital medicine. *Id.* Pena offers a

16

number of other methods he claims would injure a person without using force: poisoning someone, exposing someone to hazardous chemicals, locking someone in a car on a hot day, or abandoning someone without food or water far from civilization. Pena Br. at 7. Pena also proposes ways to injure property without using force: spray-painting a car, putting a passport through a shredder, erecting a garish display to lower local property values, or taking economic action to diminish the value of a stock. *Id.* at 8. For several reasons, Pena's examples fail to demonstrate that Hobbs Act robbery encompasses conduct that does not involve the use of Section 924(c) force.

First, Pena takes an unduly cramped view of Section 924(c) force. Under the law of this circuit, many hypotheticals that he claims do not involve the use of force actually do involve it. Pena contends that the use of poison, for instance, does not require the use of force. Pena Br. at 7 (citing *United States v. Torres-Miguel*, 701 F.3d 165, 168–69 (4th Cir. 2012)). But even applying a stringent standard—for example, the one Pena reads *Johnson* to require—poison can certainly be a strong enough force to cause physical pain or injury to another person. Pena's argument must be that the use of poison is somehow insufficiently active, or insufficiently direct, or involves insufficient physical exertion on the part of the perpetrator, to constitute the use of force. But *Johnson* does not equate force with the throwing of a punch. In fact, the Supreme Court in *Johnson* explained that "physical force" is a broad term encompassing all "force exerted by and through concrete bodies—distinguishing physical force from, for example, intellectual force or emotional force." 559 U.S. at 138. Moreover, as discussed above, the Second Circuit has not applied *Johnson* to Section 16 or Section 924(c).

The law of the Second Circuit does not support Pena's view of Section 924(c) force. In the context of Section 16, the Second Circuit has rejected the notion that the force must be "applied directly to the person of the victim." *Morris v. Holder*, 676 F.3d 309, 314 (2d Cir. 2012). The Second Circuit has adopted an expansive definition of the word "physical" as it modifies "force" in Section 16, defining it as "an influence acting within the physical world." *Santana*, 714 F.3d at 144. Under this definition, setting a fire is a use of physical force, for example. *Id.* at 144–45. In *Vargas-Sarmiento v. U.S. Dep't of Justice*, 448 F.3d 159, 175 (2d Cir. 2006), the Second Circuit engaged with two hypotheticals in the Section 16 context very similar to those proposed by Pena. First, the court determined that a killer who poisons someone's food uses force because he has "intentionally availed himself of the forceful physical

17

properties of poison to cause death." *Id.* Second, the court explained that a wife who sands down the brake pads of her husband's car intending to cause an accident intentionally uses physical force, and "[t]he agent of that force is her automobile." *Id.* The Second Circuit in *Vargas-Sarmiento* distinguished *Chrzanoski*, on the grounds that unlike the examples in that case, the woman in the hypothetical intends to cause injury by means of a physical force (the crashing car). *Id.*

Once the breadth of Section 924(c) force is properly understood, many of Pena's hypotheticals turn out to involve it after all—even under Pena's preferred formulation of "violent" or "strong physical force," "capable of causing physical pain or injury to another person." Poison and hazardous chemicals are physical forces strong enough to cause injury, as is extreme heat. A shredder exerts physical force strong enough to injure a person or property, and intentionally placing an object in a shredder is using force on that object. If the defendant uses guile, deception, or omission *to intentionally cause someone to be injured by physical force*, then that would be the use of force as well.

Second, in light of the Court's conclusion above that the phrase "fear of injury" in Hobbs Act robbery means fear of force, Pena's remaining examples that genuinely do not involve the threat of force under any definition are simply not covered by Hobbs Act robbery. If prosecutors charged a Hobbs Act robbery committed through "fear of injury," and the feared injury was (to use one of Pena's examples), a diminution of local property values due to garish construction, that case could be dismissed for failure to state an offense—only a fear of injury from the use of force will satisfy the statute. Third, even if the Court had held otherwise, Pena would still need to show "a realistic probability, not a theoretical possibility" that the elements of Hobbs Act robbery can be met without employing Section 924(c) force against the person or property of another. *Duenas-Alvarez*, 549 U.S. at 193. Pena's many examples do not satisfy the "realistic probability" standard of the categorical approach because he fails to cite any cases in which "courts in fact did apply the statute" (or indeed, any robbery statute) in the manner Pena claims they would. *Id.* In *Chrzanoski*, the Second Circuit pointed to a decision by the Supreme Court of Connecticut affirming a conviction for second degree assault (of which third degree assault is a lesser included offense) for placing tranquilizers in a victim's drink. 327 F.3d at 195–96. Similarly, in *Persaud v. McElroy*, 225 F. Supp. 2d 420, 422 (S.D.N.Y. 2002), another case Pena cites for the proposition that causing injury need not require the use of force, the district court

observed that "a common violation of [the offense at issue] occurs when a police officer falls and injures himself while pursuing a fleeing felon." Pena has not presented any case law illustrating his hypothetical ways that Hobbs Act robbery could be committed through fear of injury without force, and he has thus failed to demonstrate a "realistic probability" that the statute would actually be applied to the situations in his examples.

### 3. Causing Fear Unintentionally

Pena's last argument that Hobbs Act robbery is not a crime of violence as defined by Section 924(c)(3)(A) concerns the *mens rea* requirement implicit in the Force Clause. The Supreme Court has interpreted the word "use" in the force clause of 18 U.S.C. § 16 to require "active employment" of force, meaning "a higher degree of intent than negligent or merely accidental conduct." *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004). Pena argues that Hobbs Act robbery cannot be covered by the Force Clause because a defendant can create fear of injury inadvertently, and thus without "active employment" of force as required by *Leocal*.

In support of this proposition, Pena cites a series of cases from other circuits interpreting the required element of intimidation in the federal bank robbery statute, 18 U.S.C. § 2113. Pena Br. at 10 (collecting cases). Section 2113(a), in relevant part, criminalizes "[w]hoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another . . . any property or money or any other thing of value" from a bank. The cases Pena cites find the intimidation element of the federal bank robbery statute to be satisfied if an ordinary person in the victim's position would reasonably infer a threat of bodily harm from the defendant's actions, regardless of whether the defendant intended to intimidate the victim. *See, e.g.*, *United States v. Woodrop*, 86 F.3d 359, 364 (4th Cir. 1996). Pena claims that the intimidation element in Section 2113(a) is sufficiently similar to the "fear of injury" element in the Hobbs Act that the latter should be interpreted to cover robbery through unintentional intimidation—meaning that it cannot be a crime of violence under the Force Clause.

Even assuming that the Section 2113(a) case law applies directly to Section 1951's definition of Hobbs Act robbery, the cited case law does not demonstrate that either statute is not a crime of violence under *Leocal*. Section 2113(a) is not a strict liability crime. The Supreme Court has explained that Section 2113(a) is a general intent crime whose mens rea requirement is satisfied only if the "defendant possessed knowledge with respect to the *actus reus* of the crime

19

(here, the taking of property of another by force and violence or intimidation)." *Carter v. United States*, 530 U.S. 255, 268 (2000). In other words, a defendant charged with bank robbery pursuant to Section 2113(a) must intentionally perform objectively intimidating actions in the course of unlawfully taking the property of another. If a defendant robs a bank with violence, the prosecution need not prove a specific intent to cause pain or to induce compliance. Similarly, if a defendant robs a bank with intimidation, the prosecution need not prove a specific intent to cause fear. This does not mean that the bank robbery was accomplished through "negligent or merely accidental conduct." *Leocal*, 543 U.S. at 9. Accordingly, the Court rejects Pena's "somewhat implausible paradigm where a defendant unlawfully obtains another person's property against their will by unintentionally placing the victim in fear of injury." *Standberry*, 2015 WL 5920008, at *4. Pena has failed to demonstrate a "realistic probability" that the accidental use of force would meet the elements of Hobbs Act robbery.

In sum, the Court concludes that Hobbs Act Robbery is a crime of violence within the meaning of Section 924(c)(3)(A).

### D. The Residual Clause

In addition to arguing that Hobbs Act robbery is not a crime of violence under the Force Clause, Pena also argues that it cannot be a crime of violence under the Residual Clause because the Residual Clause is unconstitutionally vague. Because the Court holds that Hobbs Act robbery *is* a crime of violence under the Force Clause, it need not reach the question of the constitutionality of the Residual Clause.

### IV. Conclusion

For the reasons set forth above, Pena's motion to dismiss Count II of the indictment (Count III of the superseding indictment) is denied. This resolves Dkt. No. 78.

SO ORDERED:

Dated: Feb. 11, 2016
New York, New York

_____
ALISON J. NATHAN
United States District Judge