UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

United States of America,

—v—

Alberto Pena,

                 Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: FEB 12 2016

15-cr-551 (AJN)

ORDER

ALISON J. NATHAN, District Judge:

On January 25, 2016, Defendant Alberto Pena submitted a request for subpoenas to the Court *ex parte* under Federal Rule of Criminal Procedure 17(b). The Court ordered Pena to justify continuing to proceed *ex parte* or to serve his subpoenas on the Government. Pena chose the latter, and the Government objected to the subpoenas in a sealed motion to quash filed on January 29, 2016. For the reasons set forth below, the Government's motion to quash is granted.

I.      **Background**

On August 18, 2015, the Government unsealed a two-count indictment charging Pena and six others with Hobbs Act robbery, 18 U.S.C. § 1951 & 2, and brandishing a firearm during a crime of violence, 18 U.S.C. § 924(c)(1)(A)(ii) & 2. The indictment alleges that Defendants took part in a violent home invasion robbery in the Bronx on January 20, 2014, and that firearms were brandished during the robbery. Pena and four other codefendants were arrested, while two remain at large. On January 28, 2016, the Government filed a superseding indictment adding a count of conspiracy to commit Hobbs Act robbery. Trial for Pena is set to begin on February 29, 2016.

On January 25, 2016, Pena requested that the Court issue five subpoenas to the Metropolitan Detention Center, Brooklyn ("MDC"); Metropolitan Correctional Center, New York ("MCC"); and the New York Department of Corrections ("DOC"); seeking records relating

1

to two cooperating witnesses expected to testify at Pena's trial. Specifically, the requested subpoenas each sought

> Any and all records relating to inmate [cooperator name], including but not limited to: (a) name and address of all [Bureau of Prisons/DOC] locations in which [cooperator name] was housed, the dates when [cooperator name] was housed in such facilities, and all records relating to the transfer of [cooperator name] between and among [Bureau of Prisons/DOC] facilities; (b) all records of phone calls made to and from [cooperator name] from [Bureau of Prisons/DOC] custody, including but not limited to: call logs and audio recordings; and (c) all Corrlinks emails sent to and from [cooperator name's] account.

## II.     Legal Standard

Rule 17(c) permits subpoenas ordering the production of "books, papers, documents, data, or other objects." Fed. R. Crim. P. 17(c)(1). However, upon a motion "made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2).

As a preliminary matter, the Court will apply the standard articulated in *United States v. Nixon*, 418 U.S. 683, 699–700 (1974). The Court declines Pena's request to apply the more liberal standard for defense subpoena requests to third parties articulated in *United States v. Tucker*, 249 F.R.D. 58 (S.D.N.Y. 2008). "Though the *Tucker* Court found this relaxed standard appropriate, it is not the prevailing law," and the overwhelming majority of district courts in the Second Circuit have applied the *Nixon* analysis to such requests. *United States v. Barnes*, No. S9 04 CR 186, 2008 WL 9359654, at *3 (S.D.N.Y. Apr. 2, 2008).

Under the standard laid out by the Supreme Court in *Nixon*, 418 U.S. at 699–700, a party responding to a motion to quash "must make a preponderance showing that the materials requested are relevant, specifically identified, admissible, and not otherwise procurable by the exercise of due diligence." *United States v. Barnes*, 560 F. App'x 36, 39–40 (2d Cir. 2014) (citing *Nixon*, 418 U.S. at 699–700) (no apparent relation to the district court decision cited *supra*). The purpose of Rule 17(c) "is to facilitate the trial by designating a time and place prior to trial to obtain and inspect evidentiary material." *Barnes*, 2008 WL 9359654, at *2.

Accordingly, pretrial subpoenas are not intended to function as "a broad discovery device," *id.*, and courts must be vigilant to ensure that Rule 17(c) is not used for the purpose of "a general 'fishing expedition.'" *Nixon*, 418 U.S. at 700.

### III. Analysis

Pena bases his request for subpoenas on information contained in the Government's Rule 16 discovery. He states that the Government has disclosed to him pursuant to Rule 16 that it will introduce testimony from two cooperating witnesses who claim that Pena planned, but did not participate in, the robbery charged in the indictment. Pena further claims that a document turned over under Rule 16 refers to a prison phone call from one cooperator to an intermediary, asking the intermediary to retrieve something belonging to the other cooperator. In his opposition to the motion to quash, Pena explains that the purpose of the subpoena is to seek evidence that the cooperators "had the opportunity to and likely did communicate through an intermediary," and thus could have coordinated their stories to falsely implicate Pena. Pena Br. at 3–4. He further argues that the subpoenas might produce further leads, such as enabling him to identify the intermediary and subpoena her testimony. *Id.* at 4. Finally, Pena claims that pretrial review of the evidence is necessary because he must determine whether to call custodians of records during his case in chief to authenticate the subpoenaed materials. *Id.*

Pena has failed to make the required showing under *Nixon* that the telephone recordings and emails that he seeks would be admissible as evidence. Such materials are "of their nature hearsay." *United States v. Jackson*, No. 02-cr-756, 2006 WL 1993251, at *2 (S.D.N.Y. July 14, 2006); *see also Barnes*, 2008 WL 9359654, at *4. Additionally, some portion of the recordings and emails are likely inadmissible because they are privileged. *Barnes*, 2008 WL 9359654, at *4. Although hearsay may be admissible for impeachment purposes, Rule 17(c) subpoenas may not issue prior to trial to obtain materials usable only to impeach. *United States v. Cherry*, 876 F. Supp. 547, 553 (S.D.N.Y. 1995) (collecting cases); *see Nixon*, 418 U.S. at 701 ("Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of

3

trial."). Pena cannot get around this bar by claiming that he needs to determine whether to call records custodians in his case in chief, since that logic would apply to any case in which records are subpoenaed. Pena's argument that the telephone recordings and emails could generate leads which would in turn produce admissible evidence is not sufficient to fulfill the admissibility requirement of *Nixon*. To get a subpoena under Rule 17(c), Pena must show that the materials he seeks are *themselves* admissible as evidence, which he has failed to do. *See Cherry*, 876 F. Supp. at 552–53.

Pena argues that the remaining materials he seeks—call logs, housing and transfer records, and "any and all" other materials —would be admissible as records of a regularly conducted activity under Federal Rule of Evidence 803(6). Pena Br. at 4 n.2. This may well be true of the three specified types of records, though Pena has failed to make the requisite showing regarding the admissibility of "any and all" other records regarding the cooperators that might exist at the MDC, MCC, or DOC. However, all of Pena's requests share a deficiency that is fatal to the subpoenas in their entirety: a lack of specificity.

Pena has failed to demonstrate that the subpoenas he requests meet *Nixon*'s specificity requirement. His request for "any and all" records associated with the Government's cooperating witnesses for an indefinite length of time takes an impermissible shotgun approach to Rule 17(c). "The fact that the subpoena is crafted to encompass such a broad swath of items indicates that the subpoena was intended as a discovery device rather than as a mechanism for obtaining specific admissible evidence." *Barnes*, 2008 WL 9359654, at *4. Accordingly, courts in this Circuit routinely reject pretrial subpoenas seeking all recordings, documents, and/or records from imprisoned cooperators for want of specificity. *See Barnes*, 560 F. App'x at 40; *United States v. Rivera*, No. 13-cr-149, 2015 WL 1540517 (E.D.N.Y. Apr. 7, 2015); *United States v. Ashburn*, No. 11-cr-303, 2015 WL 1033063 (E.D.N.Y. Mar. 6, 2015); *Barnes*, 2008 WL 9359654; *Jackson*, 2006 WL 1993251; *United States v. Hutchinson*, No. 97-cr-1146, 1998 WL 1029228 (E.D.N.Y. Dec. 23, 1998). That Pena has some reason to believe that the cooperating witnesses in this case had an opportunity to communicate does not excuse him from *Nixon*'s

4

requirement that he must specifically identify the materials he is seeking to bear out his suspicions under Rule 17(c). The Court concludes that Pena's application for subpoenas is a "blanket request [that] implicates all of the problems associated with a classic 'fishing expedition.'" *Barnes*, 2008 WL 9359654, at *4. Pena has failed to show by a preponderance of the evidence that his request for subpoenas meets *Nixon*'s specificity requirement, and it would therefore be "unreasonable or oppressive" to require the targets of the subpoenas to comply with them. Fed. R. Crim. P. 17(c)(2).

As a final note, the Court trusts that the Government is aware of its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and 18 U.S.C. § 3500, and that it will be prepared to make all necessary disclosures at the appropriate time to minimize any delay at trial. Moreover, "[a]lthough the government is not obligated to obtain information not presently in its possession, it may be improper for the government to remain willfully ignorant to key impeachment material." *Rivera*, 2015 WL 1540517, at *5. Accordingly, the Court "encourages the government to obtain evidence that may be relevant to the credibility and impeachment of its witnesses and disclose this information" to the defendants as soon as practicable. *Id.*

### IV. Conclusion

For the reasons set forth above, the Government's motion to quash is granted.

SO ORDERED.

Dated: Feb. 12, 2016
New York, New York

_____
ALISON J. NATHAN
United States District Judge